UNITED STATES of America

v.

Mary Sue HUBBARD, et al.

Appeal of CHURCH OF SCIENTOLOGY OF CALIFORNIA.

No. 82–1693.

United States Court of Appeals, District of Columbia Circuit.

Argued July 23, 1982.

Decided Aug. 10, 1982.

Michael Lee Hertzberg of the Bar of the New York Court of Appeals, pro hac vice, by special leave of court, with whom Leonard B. Boudin, Eric M. Lieberman, New York City, and Roger C. Spaeder, Washington, D. C., were on the brief, for appellant.

Thomas Hoffman, Boston, Mass., of the Bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, for petitioner-appellee Paulette Cooper.

Judith Hetherton, Asst. U. S. Atty., with whom Stanley S. Harris, U. S. Atty., and John A. Terry and Raymond Banoun, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee United States.

Before ROBINSON, Chief Judge, and MacKINNON and WALD, Circuit Judges.

Opinion PER CURIAM.

Concurring opinion filed by Circuit Judge MacKINNON.

PER CURIAM:

In 1977, following issuance of a very comprehensive search warrant, the United States Government seized several thousand documents from two Los Angeles premises of the Church of Scientology of California (Scientology). To aid in a criminal prosecution of several Scientologists, photocopies of a large subset of these documents were placed in the hands of the clerk of the United States District Court for the District of Columbia, under seal.[1] On the day before entering guilty verdicts on a stipulated record, the district court judge presiding over the criminal prosecutions of nine Scientologists unsealed the court's copies of all of these documents, except for certain ones whose originals had been returned to Scientology. Nine months later, we reversed, holding that the district court should release generally only those documents in which the public, or some member of the public, had a particularized interest sufficient to overcome Scientology's privacy interest. *United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980). On remand, a different district judge[2] found no particularized interests warranting disclosure. We therefore ordered all of the documents in the district court's possession resealed. *United States v. Hubbard*, 650 F.2d 293, 332–33 (D.C.Cir.1981) (supplemental opinion).

During the nine months between the district court's unsealing order and our reversal, the district court's copies of the documents were available for public inspection and photocopying.[3] Scientology asked us to recall and modify our mandate to seal the copies made during this nine-month period. We denied Scientology's motion in an unpublished order on January 19, 1982, mainly on the ground that it would be impractical to restrict third parties' use of their copies of the documents.[4]

We thus have made clear the status of two sets of copies of the seized documents: those in the district court's possession are,

---

1. *See generally United States v. Hubbard*, 650 F.2d 293, 296–99 & n.6 (D.C.Cir.1980).

2. The original trial judge had recused himself.

3. A motions panel of this court had denied a stay of the unsealing, the court en banc had denied reconsideration, and Chief Justice Burger, as Circuit Justice, had denied a stay.

4. The operative portion of our January 19 memorandum reads as follows:

Recall and modification of a mandate is guided by equitable considerations. 7 J. Moore, FEDERAL PRACTICE ¶ 60.19. Recall and modification are limited to exceptional cases involving not just "good cause" and a need to prevent injustice but falling within one of several "special reason[s]." *See Greater Boston Television Corporation v. F.C.C.*, 463 F.2d 268, 275–80 (D.C.Cir.1971). This is not an exceptional case warranting the exercise of our power. Scientology fears that without additional protection from this court, private persons who have obtained copies of the documents while they were improperly unsealed will be free to use them as they please without judicial oversight of the kind involved in

for the time being,[5] under seal; those in the possession of anyone but the district court, the government, and Scientology may be freely disseminated.[6] This appeal requires us to address for the first time [7] the status of a third set of the documents: the originals still in the government's hands. The district court concluded that the government's originals could be produced, without seal, to parties having a need for them. We believe a more moderate procedure will best accommodate the legitimate interests of the parties before us, as well as the various courts that must consider these documents. We therefore modify the district court's order.

## I.

The Commissioner of Internal Revenue is defendant in an action in the Tax Court in which Scientology is seeking a tax refund, claiming it should be afforded tax-exempt status for 1970, 1971, and 1972. The Internal Revenue Service (IRS) wishes to use part of one of the seized documents ("Exhibit FX") in this litigation. The trial judge in the Tax Court, however, has declined to admit the document into evidence without some indication from a court in this jurisdiction that to do so would not violate *Hubbard*. The government thus moved in the district court on January 13, 1982 that Exhibit FX be "certified" to the Tax Court.[8]

Paulette Cooper is plaintiff in one tort action, and defendant in another, against Scientology. She has copies of several hundred of the seized documents, having made copies in the district court clerk's office

---

the course of ordinary discovery procedures. The additional protection sought is general, *i.e.*, requiring return of all copies, enjoining their future use, and making the sealing order effective *nunc pro tunc* back to the time of the improper unsealing. Scientology itself cautions that we ought not fashion a protective order deciding which documents are relevant to or discoverable in litigation in the various courts throughout the country. That caution is well taken; the various courts overseeing civil actions in which the documents are or may be involved are best able to oversee use of the copies made while the documents were improperly unsealed as well as to supervise discovery. Further, the general prohibition Scientology seeks here however would apply to unidentified non-litigants who acted in good faith in obtaining the documents and whose actions would now be governed by an order they had no meaningful opportunity to contest. Any such general prohibition would not only extend the court's mandate to unknowable limits but would realistically be unenforceable as well.
*See also infra* note 6.

**5.** Both Scientology and the government indicated at oral argument that they expect at some point in the future to file motions to change the status of the court's copies. We note that many circumstances have already changed since we filed the *Hubbard* opinions in 1980 and 1981—the seizure of the documents has been upheld against a fourth amendment attack, criminal convictions have been obtained and affirmed, and the Supreme Court has denied certiorari with respect to all but two of the defendants. *See generally United States v. Heldt*, 668 F.2d 1238 (D.C.Cir.1981), *cert. de-*

nied, —— U.S. ——, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). We do not, of course, decide whether these changed circumstances would justify a general unsealing of the documents at this time, for neither the district court nor this court has been presented with a motion for such unsealing.

**6.** Scientology makes an argument that some people who copied the district court's documents during their period of availability may not have done so "in good faith" and are therefore outside the scope of our January 19 memorandum. *See supra* note 4. We disagree. Anyone who wished to copy the documents during those nine months was totally free to do so; "bad faith" in this context is a meaningless term. Nonlitigants (in the criminal case below) who copied these documents are subject only to the oversight of "courts overseeing civil actions in which the documents are or may be involved." *Id.*

**7.** The oral argument in this appeal made clear that no one contends that our *Hubbard* opinions addressed in terms the government's originals. Scientology contends only that those opinions have logical implications for the government's originals.

**8.** The IRS has apparently long been in possession of Exhibit FX, having obtained copies both from the United States Attorney or Federal Bureau of Investigation (FBI) for law-enforcement purposes, and from the district court during the nine-month period of unsealing. The government's January 13 motion in the district court, therefore, pertained not to actual release of anyone's copy of Exhibit FX, but to the Tax Court's *use* of the document.

during the unsealed period. She wishes to use these documents in her pending lawsuits, one in federal district court in Boston, the other in federal district court in Los Angeles. She sought through ordinary discovery to have Scientology confirm the authenticity of the documents in her possession, but Scientology would only admit that they were true copies of the documents *returned* to it by the FBI, suggesting that they might differ in some way from the originals *seized* from Scientology. Ms. Cooper therefore sought to depose the custodian of the original seized documents so that she could authenticate her copies. She served a subpoena duces tecum on the United States. The United States, in accord with a disposition agreement entered into with the criminal defendants,[9] provided Scientology with ten days' notice of its intention to comply with the subpoena, and Scientology promptly sought from the district court here a protective order prohibiting disclosure of these documents, or the deposition transcript, to the public.

On February 17, 1982, the district court ruled on the IRS' motion and Scientology's motion. In a thoughtful analysis of our *Hubbard* opinion, the court held

> that the original seized documents now in the hands of the government, as well as all copies of the documents obtained by individuals during the nine month unsealing, fall within the scope of the sealing order placed on the documents by the Court of Appeals' decision in *United States v. Hubbard*, 650 F.2d 293 (D.C.Cir. 1980). These documents, although not physically located within the confines of the United States Courthouse, are never-

theless under seal and may not be disseminated without first securing from this Court an unsealing order specifically permitting such dissemination. This is true whether the proposed dissemination would result in "wholesale public access" to the documents or in a more limited disclosure of the documents.

Memorandum opinion at 5–6. The court went on to hold, however, that both the IRS and Ms. Cooper had a particular need for the documents, so that certification of Exhibit FX and Ms. Cooper's deposition, with its accompanying documents, could go forward, so long as Exhibit FX and the deposition transcript were placed under seal in the courts in which they were to be used.[10] *Id.* at 7–10.

Scientology neither sought reconsideration of nor took an appeal from the February 17 ruling. The government, however, sought reconsideration and modification of the opinion and order, and Ms. Cooper sought "clarification."[11] In its twenty-two-page motion, the government complained at length that the February 17 decision had the effect of retroactively making illegal numerous disseminations of the documents that had already taken place within the federal government. In a single paragraph, the government also argued that there was no need for a seal on the Tax Court document because of the "strong public policy in favor of full disclosure of evidence upon which a court relies in rendering its decisions." R. 948 at 21 (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1977); *Hubbard*, 650 F.2d at 317–18 & n.96).[12] Ms. Cooper

---

9. The disposition agreement is discussed briefly in *Hubbard*, 650 F.2d at 300–01, and reprinted in full in *United States v. Heldt*, 668 F.2d 1238, 1286–88 (D.C.Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). The relevant paragraph, number 8, is reprinted in *id.* at 1287. Scientology was not a party to the disposition agreement, and we held in *Hubbard*, 650 F.2d at 319–20, that its interests are distinct from those of the individual criminal defendants. Scientology is, however, a third-party beneficiary of the disposition agreement in this context.

10. We understand the district court's finding that Ms. Cooper and the IRS had a need for these documents to be undisputed. In any event, it is indisputable.

11. Times Publishing Company, a publisher of two Florida newspapers, also sought to intervene and to have the district court modify its order. The district court denied intervention, and Times Publishing Company has not appealed.

12. "R." refers to the numbered documents in the district court record.

attached to her motion copies of three letters in which counsel for Scientology or Scientologists had advised Ms. Cooper and others that the February 17 opinion required that they not disseminate their copies of the documents, and further that they withdraw the copies attached to their pleadings in pending litigation. Ms. Cooper's motion argued that this was an unconstitutional prior restraint on free speech and that these documents were already in the public domain. R. 949. Both the government and Ms. Cooper also relied heavily on our January 19 memorandum, *see supra* note 4, which for some reason had not come to the attention of the district judge when he ruled on February 17.[13]

In another thoughtful opinion, the district judge on June 10 vacated his February 17 order. In light of our January 19 memorandum, he held that "when the Court of Appeals imposed the seal in *United States v. Hubbard, supra,* it intended to seal only those documents actually located in the court files." Memorandum opinion at 4. He therefore removed all restrictions on government dissemination except those found in the disposition agreement, *see supra* p. 958 & note 9, removed all restrictions on private party dissemination, and ordered that the certification of Exhibit FX and Ms. Cooper's depositions go forward without the seals previously imposed.

Scientology appealed this ruling and sought a stay pending appeal from the district court. The district court denied a stay, and Scientology then sought an emergency stay from this court. We granted a temporary stay on July 14 and on July 20 ordered that all briefing of the entire appeal be completed by July 22 and that oral argument take place on July 23.[14] We now decide the full appeal.

13. The record sheds no light on why this was so. It appears there may have been some inadvertent breakdown in communications between our clerk's office and the parties.

14. No one objected to this schedule.

15. Scientology has raised a question as to whether copies of the documents produced by the subpoena duces tecum may be attached to the transcripts of the deposition taken by Ms.

## II.

In our opinion, this case presents exceedingly narrow issues. We need only decide whether the district court *in the District of Columbia* should bring about public disclosure, *at the request of these parties,* of the particular documents at issue in this litigation. We believe it should not at this time. The government's interest in certification of Exhibit FX to the Tax Court is legitimate. Certification of Exhibit FX under seal fully satisfies that interest. The further interest asserted by the government—public disclosure of evidence *upon which a court relies*—may be satisfied by public disclosure when and if the Tax Court in fact relies on Exhibit FX. A Tax Court decision *to disclose or not to disclose* Exhibit FX will contravene neither the letter nor the spirit of our *Hubbard* decision and our January 19 memorandum. In short, the government's predisclosure arguments and Scientology's antidisclosure arguments should be addressed to the Tax Court judge. Our function is simply to assure the Tax Court freedom to rule as it sees fit by ordering the government's copy of Exhibit FX kept under seal unless and until the Tax Court rules otherwise. In this connection it may exercise its sound judicial discretion. It is not bound by the seal of the district court.

Similarly, Ms. Cooper's interest in authentication of her documents is legitimate.[15] This interest is protected by taking the deposition and placing it under seal. As counsel for Ms. Cooper admitted at oral argument, his client has no interest in further dissemination. There may be others who have an interest in obtaining access to

Cooper, or whether instead the FBI agent producing them may only testify as to his visual comparison of the originals and Ms. Cooper's copies. We think it clear that copies of the documents may be attached, in furtherance of Ms. Cooper's legitimate interest. Whether nothing, the transcript without attachments, or the transcript with attachments is made public is a matter for determination by the courts in which the transcript is used.

the transcript of the deposition, but they were not before the district court and are not before us. Furthermore, should they eventually appear, their arguments should not be addressed to us or to the district court here, but to the courts in which the deposition transcript will be used. Our jurisdiction, it should be obvious, does not extend to Boston or Los Angeles; we cannot, should not, and do not restrict the district courts in those places from unsealing the deposition transcript, or portions thereof, in accord with the usual principles governing public access to the fruits of discovery,[16] and documents in the record of court proceedings. Our jurisdiction does, of course, extend to the district court here, and we hold that that court should have recognized the Boston and Los Angeles courts' freedom to rule by ordering the deposition transcript kept under seal unless and until they rule otherwise.

We therefore hold that the seal on Exhibit FX and the deposition transcript is retained until they have been received in the courts in which they are to be used. Those courts may then rule on the status of such documents as they consider proper. Two other points require brief elaboration. We affirm the district court's June 10 order insofar as it removes restrictions on third-party dissemination of the documents obtained during the unsealing period. The June 10 order in this respect comports fully with our January 19 memorandum. *See also supra* note 6. Also, we affirm the June 10 order insofar as it removes any retroactive invalidation of intragovernmental dissemination of those documents. No matter how broadly or narrowly our *Hubbard* opinion is read, it certainly allows dissemination

by the government "to appropriate law enforcement agencies." *Hubbard*, 650 F.2d at 323.[17] The record reflects that the government has done no more than give copies of the documents to such agencies.[18]

### III.

We remand this case to the district court. The district court shall modify its June 10 order to require that Exhibit FX be kept under seal unless and until the Tax Court orders otherwise. The district court shall also modify its order to require that the transcript of the deposition taken by Paulette Cooper of FBI Agent Varley be transmitted under seal to the United States District Courts for the District of Massachusetts and for the Central District of California. Once the transcript is in the possession of those courts, they may rule on its status. In all other respects, the district court is affirmed.

*So ordered.*

MacKINNON, Circuit Judge (concurring).

I concur generally in the foregoing opinion but desire to comment additionally. At oral argument appellant's counsel stated they were proceeding on the theory that they could eventually obtain the return of *all* the original evidentiary documents seized from the Church of Scientology (Scientology) which were introduced as exhibits in the case. Implicit in this theory as advanced was the assumption that the Government would also surrender all copies of the exhibits. If the theory of Scientology eventuated, the evidentiary record in this case would end up devoid of reliable substantiation. Scientology's theory cannot

---

**16.** These principles, of course, largely depend on a balancing similar to that we undertook in *Hubbard*, and these courts may well look to our *Hubbard* opinion (with due regard to changed circumstances, *see supra* note 5) for guidance. They are, however, clearly not *bound* by our *Hubbard* opinion.

**17.** In *Hubbard* we said that the *district court* could make copies available to such agencies. Counsel for Scientology, however, does not contend that the government is more restricted in this regard.

**18.** "[A]ppropriate law enforcement agencies," as we used that term in *Hubbard*, encompasses agencies charged with enforcing *both* the criminal and civil laws (including internal revenue laws). The public has a strong interest in the enforcement of both. *Cf. Hubbard*, 650 F.2d at 323 ("[A]ccess might be ... warranted ... where the remedies of grievously injured and unknowing victims would be jeopardized if the documents never entered the public domain".).

prevail. The court must at all times retain a complete and authoritative record.

It was further claimed at oral argument that our decision in *United States v. Wilson*, 540 F.2d 1100 (D.C.Cir.1976), supports Scientology's position. Having authored *Wilson*, which is apparently the leading case, I believe it worthwhile to correct some misconceptions. We held in *Wilson* that a federal district court possesses both the jurisdiction and duty "in a criminal case to return to the defendant that property seized from him in the investigation but which is not alleged to be stolen, contraband, or otherwise forfeitable, and which is not needed, or is no longer needed, as evidence." *Id.* at 1101. *Wilson* involved money, whereas here we are dealing with corporate records and documents. There was no intent in *Wilson* to deal with other property. Money, to which the Government has no further claim, is usually properly returned to a defendant when the case is over and its evidentiary value, if any, has been exhausted.

Corporate records and documents, however, are of a different character and involve some different considerations. Generally when corporate business records are admitted into evidence, if they are *needed* by the corporation for its operations, copies are furnished and the practice is for the court to exercise its discretion to allow the return of the originals to the corporation. The originals need not be returned, however, if they are needed by the court. After the case is finally completed the court may, in its discretion, permit the substitution of copies for the originals. It is important that the court's evidentiary record at all times be complete and authoritative. This is particularly important in criminal cases where some defendants attempt to attack their convictions many years after they became final; an authoritative evidentiary record may be required to resolve issues.

Courts may also allow the government to retain seized documents and other property not used at trial for investigations relating to other possible criminal actions. Such was the conclusion of the Sixth Circuit in *United States v. Murphy*, 413 F.2d 1129 (6th Cir.), *cert. denied*, 396 U.S. 896, 90 S.Ct. 195, 24 L.Ed.2d 174 (1969), where it stated:

> The main point of appellants' argument in this regard was that they had the right to the return of other property and documents which were seized by the Government at the time of their arrest and were not exhibits in the case. This property and the other documents were being held so that it could be determined whether they were stolen from other institutions, and could be used as exhibits in numerous subsequent actions commenced against appellant in different parts of the country. But the withholding of this property from appellants resulted in no error or prejudice to them in this case.

*Id.* at 1140. The reasoning of the Sixth Circuit appears to have particular relevance here where additional criminal and civil actions have either been commenced or may yet be instituted. Amidst the prospect or actuality of subsequent litigation the *integrity* of seized documents that were admitted into evidence in an earlier proceeding must be preserved against the contention that any copies are not true and correct. Appellant here has already claimed that copies of some documents are not correct copies of documents seized pursuant to the search warrant. Under such circumstances the court in its discretion might decide to retain the originals if appellants are unable to show a *legitimate* business need for them. It is difficult to imagine what legitimate business need appellants could show for the documents in question because they are not ordinary business records but were seized because of their relevance to certain criminal offenses which have resulted in convictions and sentences. It may be that appellants are attempting to obstruct plaintiffs from obtaining evidence necessary for some civil actions that are pending or might be brought against Scientology or its officials.[1]

The disposition to be made of evidentiary documents lies within the sound discretion of the trial court which should be alert to

---

1. Counsel for Intervenor-Appellee Paulette Cooper at oral argument mentioned his efforts to authenticate some of the documents that are relevant to her pending civil litigation with

preserve an accurate and complete evidentiary record covering all proceedings and exhibits.

As the Third Circuit held in *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297 (3d Cir. 1978), a district court's determination of the reasonableness of the retention of property should include "consideration of the purposes for which the property is being held." *Id.* at 1304. The Third Circuit further admonished that district courts should be "sensitive to the need to balance the owner's interests and the often complex and varied governmental interests in retaining evidence for trial." *Id.* The retention of an authentic record should also figure in this equation. Only if the Government's retention is unreasonable in light of all the circumstances should the district court order the return of the seized property.

Scientology. Cooper should also consider whether such authentication might be accomplished by (1) the inventory of the search that was filed with the court and (2) by any additional notes or memoranda that the Government may have made contemporaneously with the search.